(C. D. 998)

MIGLIORETTI BROS. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 10, 1946)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon, Harold L. Grossman, Dorothy C. Bennett*, and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of wine from Italy was imported in bottles at the port of Baltimore. It was all entered as still wine, but

the collector assessed duty upon 40 cases of the 50-case lot described on the invoice as "Red Reciotto Extra" at the rate applicable to sparkling wine, viz, $3 per gallon, under the provisions of paragraph 803 of the Tariff Act of 1930, as modified by the French Trade Agreement (T. D. 48316). Plaintiff in an amended protest claims that the merchandise is a still wine and as such dutiable at 75 cents per gallon under paragraph 804 of said act, as modified by the said French Trade Agreement, which changed the rate on "Still wines produced from grapes (not including vermuth), containing 14 per centum or less of absolute alcohol by volume, in containers holding each one gallon or less." The wine in dispute, as shown by the report of the customs laboratory in evidence, contains 12.29 per centum of alcohol by volume.

The question for determination is whether this is a sparkling wine or a still wine.

A member of the plaintiff company, Mr. James Miglioretti, testified on behalf of the plaintiff. His testimony may be summarized as follows. He has had many years' experience in the wholesale wine and liquor business. He tasted the wine in the office of the Government examiner of this merchandise at the port of Baltimore, and considered it a still wine. His testimony as to what took place at that time is as follows:

We opened an extra bottle to make sure there would not be any doubt, because the bottle that was open, the vitality disappeared, so we opened a new bottle, and on the opening there was a little bit of fume, and that was caused, that is only my interpretation. Probably the bottle was capped in a warm place. Sometimes it causes that, but when the wine was poured into the glass, it didn't show much sparkling, to be considered as a sparkling wine. All that it had formed like a ring around the glass with a few bubbles, that several red still wine causes, if they are good wine, and receive special treatment.

He stated that if this was a sparkling wine "you would see a whole lot more than bubbles in the glass." The witness had never seen sparkling wine produced but had observed the manufacture of still wines in Italy. The fact that the bottle emits fumes indicates "Most of the time, that the wine is kept in a warm place," but would not in any way tend to show whether the wine was sparkling or still.

The Government produced as a witness Mr. Edward F. Kenney, who is assistant to the Chief, Division of Laboratories, Bureau of Customs, Washington, D. C., formerly associate chemist in the customs laboratory at Baltimore. During the course of his duties he had tested over 500 samples of wines for the purpose of reporting the classification of wines and liquors for duty and tax purposes. He gave as his definition of a sparkling wine "an effervescent wine, charged with carbon dioxide, which was generated by natural fermentation in a close container." After analysis the elements that determine his judgment as

to whether a wine is a still or a sparkling wine, is "the effervescence, the manner in which it behaves after the bottle has been opened, the amount of effervescence, the tendency for it to bubble, and the bubbles to collect on the surface when the transfer is made to a glass or beaker." Although this witness did not recall the particular sample in this case, his initials are on the label, and he stated in answer to a question that he followed the same method whenever the question of still or sparkling wines was before him.

The report of the customs laboratory in evidence (exhibit A) made by this witness is as follows:

| | |
|---|---|
| Weight of empty bottle | 1.441 |
| Volume of contents, Fl. Ozs | 13.0 |
| Alcohol by volume | 12.29% |
| Sample is a sparkling wine. | |
| Bottle and unused contents returned herewith, under laboratory seal. | |

Mr. Bitzel, a witness on behalf of the Government, stated that in 1938 he was clerk to the examiner of wines at Baltimore; that the stopper on this shipment was of a mushroom, wired-on, champagne type; and that it was the type found on sparkling wine.

At the last hearing held at Baltimore, Mr. Louis Miglioretti, the senior partner of the importing company, testified on behalf of the plaintiff. He stated that his ancestors were in the wine business for centuries; that he grew up in it and worked with it in Italy. Prior to coming to this country he had 4 years' special training and since 1937 has been engaged in the importation and handling of wines; that he has been engaged in buying and selling wine, both sparkling and still wines, at wholesale from December 1933, dealing in quantities of from 100,000 gallons to half a million gallons a year, and that (relatively to the amount of still wines) about 5 per centum were sparkling wines in each year; that he had dealt in this "Reciotto" wine from about 1934 on in quantities of about 150 cases each year. This witness gave as his definition of a still wine a "wine made of grapes where the natural fermentation is run on free of sugar and by its own action stops fermentation." In reply to a question as to whether a still wine had any sugar content this witness replied:

Well, some have a little left, about 1 or 2 per cent, that is due to the nature of the grapes that leaves it that way.

He stated that according to his business experience in dealing in both sparkling and still wines and as a manufacturer, he did not consider that a sparkling wine "could be held at over 14 per cent alcohol by content" which he explained to mean volume. He also compared a typical "Reciotto" wine bottle (exhibit 2) and a typical champagne or sparkling wine bottle (exhibit B), and testified that he did not believe the Reciotto bottle (exhibit 2) would be suitable for holding sparkling wine because it is not strong enough. He further stated

that some of the still wines in which he deals have some effervescent qualities and in explanation of that statement, testified as follows:

There are some parts of Italy, particularly in the slopes of the Alps, that due to the peculiar condition of the grapes they have there, once any fermentation is finished there is a certain amount of grape sugar left in the finished wine that gives it a slight carbon dioxide content or effervescent quality or crackling or vitality to these wines, and to be kept that way they are put in a type of bottle like this Exhibit 2 with a flat cork because they are very seldom exported out of the bottle and a piece of twine is put there to hold the cork. There are a lot of wines like that.

There was offered and received in evidence as illustrative exhibit C, United States Treasury Department Regulations No. 7 issued in 1937, in which is found on page 22 a definition as follows:

"Champagne" and "sparkling wine" shall mean effervescent wine charged with carbon dioxide, resulting from secondary fermentation of the wine.

Upon being interrogated this witness described "secondary fermentation" as follows:

In making sparkling wine, after the first fermentation is finished, which takes place around the early Spring of the following year, the wines are prepared to be sold as sparkling wines and are put in vats and made into a blend by the addition of sugar and sometimes sugar and brandy, sometimes one made out of syrup or sometimes rock candy is then added to those wines, and in order to secure the second fermentation in the bottle the wine is bottled and around the outside of the bottle over the cork they put a tin like this Exhibit 2. The addition of the sugar or rock candy causes the second fermentation.

The wine is bottled immediately after the addition of sugar and the second fermentation takes place in the bottle, the sediment being subsequently extracted.

On cross-examination this witness stated that 12 per centum alcoholic content would not be too low in alcoholic content for sparkling wine—if anything it would be a better wine than one of 14 per centum. He also admitted that where there is less carbon dioxide pressure, a lightweight bottle is required.

The Government produced further testimony of Mr. Charles L. Bitzel, who had testified at a previous hearing in this case. He stated that he was present in the appraiser's stores when exhibit 2 (a bottle of the imported wine) was opened in the presence of the Government examiner, an opener and packer, Mr. Jack Miglioretti, and a member of the customs brokerage firm which handled this entry. His testimony in substance was that this bottle was sealed; that it had a champagne cork, wired to the bottle, and that when the bottle was opened the cork popped out and went half way to the ceiling; that he drank some of the contents of the bottle which he described as effervescent; that in his opinion it was a sparkling wine. On cross-examination the witness admitted that this took place more than 3 weeks after importation, in midsummer; that the bottle had been

brought to the examiner's office by Mr. Jack Miglioretti; that he had no knowledge of the temperature of the wine when it was opened nor of the room temperature at that time; that he did not observe the bubbling of the wine in the glass for a considerable period of time but for several minutes; that he makes no claim to be an expert on wines. In answer to a question propounded by the judge presiding at the trial as to whether the bottle had been iced before it came to the laboratory, the witness stated he had no knowledge as to that.

Mr. Louis Miglioretti, upon being recalled on behalf of the plaintiff, testified that due to the delicate nature of certain types of wine, it would·be very imprudent to ship a type of wine like that in suit in any other manner than that in which it was received; that it calls for a bottle with better and more secure corking. As to his own tests of Reciotto wine, he stated that he observed a foam much more than effervescence at the time of pouring; that his observation is based on serving wine at the proper temperature; that the bubbles in the glass almost disappear within several minutes after pouring. However, he admitted on cross-examination that these tests were of shipments imported by another concern than his own. In answer to a question as to why he would consider it imprudent to ship Reciotto wine in a bottle of less strength than exhibit 2, he replied that he certainly would not ship a wine as delicate as this to a climate such as that of Maryland in any other package than exhibit 2; that the wine would spoil, the bottle might burst by reason of the handling on board ship, and the cork might pop.

Taking into consideration the experience of the witnesses on either side, we find that the evidence preponderates in favor of the plaintiff whose witnesses were men of long experience in the wine business both in buying and selling and also manufacturing.

While the character of the containers of the instant wine would indicate that it is a sparkling wine in that the bottles are those used for sparkling wines such as champagnes or burgundies, the statements of plaintiff's witnesses that due to the delicate nature of this type of wine it would be imprudent to ship it in any other type of bottle, was not refuted.

We find that upon the record as made plaintiff has sustained its burden of proof. We therefore hold that the Reciotto wine in suit is a still wine, properly dutiable at 75 cents per gallon under paragraph 804 of the Tariff Act of 1930, as modified by the French Trade Agreement, *supra*.

Judgment will be rendered accordingly.